UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN J. WIITANEN,

                    Plaintiff,                          No. 05-CV-71684-DT

                                                        Hon. Gerald E. Rosen

vs.

JOSEF DWORATSCHEK,

                    Defendant.

_____/

OPINION AND ORDER REGARDING DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on _____October 4, 2005_____

PRESENT:  Honorable Gerald E. Rosen
                 United States District Judge

I. INTRODUCTION

In this diversity tort action,[1] Plaintiff John J Wiitanen is suing Defendant Josef

Dworatschek under a common law negligence theory and under Michigan's dog-bite

statute, M.C.L. §287.351.  The case involves a dog bite suffered by the Plaintiff at an

obedience training session of the Wolverine Schuzthung Club on September 27, 2003.

_____

    [1]  Defendant Josef Dworatschek is a citizen of Canada and resident of the Province
of Ontario.

1

Plaintiff alleges that he was bitten by Defendant's dog while attempting to pull the dog off of its owner.  Presently before the Court is Defendant's Motion for Partial Summary Judgment on Plaintiff's statutory claim, only.  Defendant claims that there is no genuine issue of material fact that Plaintiff provoked the dog, and, therefore, Defendant cannot be held liable under M.C.L. §287.351.  Plaintiff has responded to Defendant's motion to which response Defendant has replied.

Having reviewed the briefs and supporting materials submitted by the parties, the Court finds that oral argument on the motion is not necessary and that it is appropriate to decide the motion "on the briefs".  *See* Local Rule 7.1(e)(2). This Opinion and Order sets forth the Courts's ruling.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On September 27, 2003 Plaintiff John Wiitanen and Defendant Josef Dworatschek were training their respective dogs at the Wolverine Schutzhung Club in Ortonville, Michigan.  Plaintiff was approximately 30 feet away from Defendant while Defendant was working with his German Shepard, Cole.  During the training session Mr. Dworatschek disciplined his dog by pulling on his collar.  The dog reacted by turning on its owner, biting Defendant's hand and arm, up to his chest.  Mr. Dworatschek screamed "ow, ow, ow," and began moving with the dog and commanding it to release him.  Mr. Wiitanen, hearing Defendant's screams, went to his aide.  Mr. Dworatschek did not ask for help, and Plaintiff admitted this in his deposition testimony. [See Plaintiff's Dep., p. 53 at Defendant's Ex A].

2

Plaintiff ran over to Mr. Dworatschek and Cole and grabbed Cole by the back of the neck.  After Plaintiff grabbed Cole, the dog released its grip on Defendant and turned on Plaintiff and bit him on the hand.

Mr. Wiitanen, who holds himself out to be an expert in training dogs, [*see* Plaintiff's Dep. p. 99], admitted in his deposition testimony that grabbing a German Shepard such as Cole when the dog is aggravated could provoke an attack on the person who grabs the dog.

> Q:     You agree that by grabbing a dog such as a German Shepard by the fur on the back of the neck when the dog is aggravated could provoke that dog to attack, correct? . . .
>
> A:     Yes
>
> * * *
>
> Q.     . . .[Y]ou knew or were aware that by grabbing a dog in this condition, sneaking up behind it and grabbing it by the back of the neck, could provoke the dog to turn on you?
>
> A      Yes.

[Defendant's Ex A, p. 52.]

Testimony from all of the other trainers who witnessed the incident corroborate Plaintiff's account of the incident and all agree that the actions of Plaintiff provoked the dog.  James Brao, who testified that he has trained 1,000 to 1,500 dogs testified, as follows:

> Q.     . . . [I]n your observation did Mr. Wiitanen provoke the dog into biting him by way of Mr. Wiitanen's actions of grabbing Cole by the back of the neck?

A.    Yes John Wiitanen - - the dog would have never bit John had he not grabbed the dog by the back of the neck.

[*See* Brao Dep., Defendant's Ex. D pp. 41-43.]

Patricia Carpenter testified:

Q.    If you grab it by the back of the neck and yank on its neck, do you think the dog will know you are there?

A.    Hopefully so because the thing that it's biting would get away.

Q.    And if you pull on the back of the dog's neck when it's angry or upset and enraged, you could be asking to get bitten as well, couldn't you?

A.    You could possibly.

Q.    That could provoke the dog to bite you when grabbing it by the back of the neck, couldn't it?

A.    It could.

[Carpenter Dep., Defendant's Exhibit E, p. 64.]

John Evans testified similarly:

Q.    Would you agree that Mr. Wiitanen in coming behind the dog and grabbing the dog by the back of the neck would provoke the dog into biting that person?

A.    Yes, sir.

[Evans Dep., Defendant's Ex. F, p. 47.]

Christine Panyard, another Schutzhung dog trainer, also testified that Wiitanen's

actions would provoke a dog:

Q:    . . . [I]f Mr. Wiitanen, as he testified, ran up from behind the dog, the dog, Cole, and grabbed the dog by the back of the neck, you would

4

expect that that would provoke the dog to turn and protect itself?

A:     Yes, I would.

* * *

Q:     Would you have expected the dog to react in that manner?

A:     Yes, I would.

Q:     So, if Mr. Wiitanen ran up behind Cole during this incident and
       grabbed Cole by the back of the neck and the fur, it doesn't surprise
       you that he got bit, does it?

A:     No, it doesn't.

Q:     In fact, many dogs would react that way in an attack or grab from
       behind?

A:     They probably would.

[Panyard Dep., Defendant's Ex. G, pp. 57-58.]

### III. ANALYSIS

#### A. STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is proper "'if the pleadings, depositions, answer to

interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law.'"  Fed. R. Civ. P. 56(c).

Three 1986 Supreme Court cases -- *Matsushita Electrical Industrial Co. v. Zenith

Radio Corp.*, 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986);

and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) -- ushered in a "new era" in the

standards of review for a summary judgment motion.  These cases, in the aggregate,

lowered the movant's burden on a summary judgment motion.[2]  According to the *Celotex*

Court,

> In our view, the plain language of Rule 56(c) mandates the entry of summary
> judgment, after adequate time for discovery and upon motion, against a party who
> fails to make a showing sufficient to establish the existence of an element essential
> to that party's case, and on which that party will bear the burden of proof.

*Celotex*, 477 U.S. at 322.

After reviewing the above trilogy, the Sixth Circuit established a series of

principles to be applied to motions for summary judgment.  They are summarized as

follows:

> * The movant must meet the initial burden of showing "the absence of a genuine
> issue of material fact" as to an essential element of the non-movant's case.  This
> burden may be met by pointing out to the court that the respondent, having had
> sufficient opportunity for discovery, has no evidence to support an essential
> element of his or her case.
>
> * The respondent cannot rely on the hope that the trier of fact will disbelieve the
> movant's denial of a disputed fact, but must "present affirmative evidence in order
> to defeat a properly supported motion for summary judgment."
>
> * The trial court no longer has the duty to search the entire record to establish that
> it is bereft of a genuine issue of material fact.
>
> * The trial court has more discretion than in the "old era" in evaluating the
> respondent's evidence.  The respondent  must "do more than simply show that
> there is some metaphysical doubt as to the material facts."  Further, "[w]here the
> record taken as a whole could not lead a rational trier of fact to find" for the

---

[2]"Taken together the three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials." 10A C. Wright, A. Miller, M. Kane, <u>Federal Practice & Procedure,</u> § 2727, at 35 (1996 Supp.).

respondent, the motion should be granted.  The trial court has at least some discretion to determine whether the respondent's claim is plausible.

*Betkerur v. Aultman Hospital Association*, 78 F.3d 1079, 1087 (6th Cir. 1996).  *See also,*

*Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989).

B      <u>PROVOCATION</u>

Defendant seeks a partial summary judgment on the issue of provocation. Provocation of the dog would negate Plaintiff's claim under the Michigan dog-bite statute.  The statute provides, in pertinent part:

> If a dog bites a person, without provocation, while the person is on public property, or lawfully on private property, including the property of the owner of the dog, the owner of the dog shall be liable for any damages suffered by the person bitten, regardless of the former viciousness of the dog or the owner's knowledge of such viciousness.

M.C.L. §287.351(1).

The Michigan dog-bite statute is a strict liability statute, with the only defense being the statutory provocation defense contained within the text of the statute itself. *Nicholes v. Lorenz,* 396 Mich. 53, 60, 237 N.W.2d 468, 470 (1976).

> In other words, the dog-bite statute imposes liability on an owner of the dog that bites without provocation.  <u>If a plaintiff provokes the dog, the dog owner is not liable for the damages that result.</u>

*Bradcas v. Jicovone*, 244 Mich. App. 263, 267, 625 N.W.2d 108 (2001).

Thus, if a dog is provoked into attack, then the owner of the dog escapes liability under the statute.  The term "provocation," however, is not defined in the statute.  When a statute does not define a term, it is appropriate to consult a dictionary for definitions of

7

statutory terms. *Peters v. Gunnel Inc.,* 253 Mich. App. 211, 655 N.W.2d 582 (2002);

*Brans v. Extrom*, 266 Mich. App. 216, 218, 701 N.W.2d 163, 165 (2005).

In *Brans v. Extrom*, the Michigan Court of Appeals consulted Black's Law Dictionary

and ultimately concluded that unintentional as well as intentional provocation of a dog

constitutes "provocation" under the statute.   The appellate court explained:

> The primary goal of judicial interpretation is to ascertain and
> effectuate the intent behind the statutory provision. If the plain and ordinary
> meaning of the language is clear, judicial construction of the statutory
> provision is not permitted. Judicial construction is appropriate only if
> reasonable minds can differ regarding the meaning of the statute.  *Livonia
> Hotel, LLC v. City of Livonia*, 259 Mich.App. 116, 130-131, 673 N.W.2d
> 763 (2003).

> The term "provocation" is not defined in the dog-bite statute. If the
> statute does not define a term, it is appropriate to consult a dictionary for
> definitions of statutory terms.  *Peters v. Gunnell, Inc*., 253 Mich.App. 211,
> 220, 655 N.W.2d 582 (2002). Black's Law Dictionary (4th ed) defines
> "provocation" as "[t]he act of inciting another to do a particular deed. That
> which arouses, moves, calls forth, causes, or occasions."  The definition of
> "provocation" does not take into account the intent of the actor; rather, the
> definition focuses on the nature of the act itself and the relationship between
> that act and an outcome.  Thus, an unintentional act could constitute
> provocation within the plain meaning of the statute because some actions,
> regardless of intent, may be more than sufficient to relieve a dog owner of
> liability.  Had the Legislature intended only an intentional act to bar
> recovery it could have so specified.  *See, e.g*., MCL 287.321(1)(d) (for the
> purposes of the dangerous animal statute, " '[p]rovoke' means to perform a
> willful act or omission that an ordinary and reasonable person would
> conclude is likely to precipitate the bite or attack by an ordinary dog or
> animal").  Instead, it imposed liability on an owner of a dog who would
> attack or injure someone without provocation. The intent of the victim is
> immaterial.

266 Mich.App. at 218-19, 701 N.W.2d at 163,165-66.  *See also*, *Palloni v Smith,* 167

Mich. App. 393, 399 (1988), *rev'd on onther grounds*, 431 Mich. 871 (1989):

8

The focus must be on the injured party's act, not on his intent, and whether that act was sufficient to provoke the dog's attack. A provocation defense should not be precluded simply because the plaintiff did not intend to provoke the dog.

By application of this plain language construction, in *Brans v. Extrom*, *supra*, the court held that the plaintiff who was bitten by a dog could not recover under the statute because she had provoked the dog when she stumbled and accidentally stepped on the animal.  Similarly in *Nicholes v. Lorenz , supra,* the plaintiff, who accidentally stepped on a dog's tail, was held to have provoked the dog and, hence, not entitled to damages under the statute.  *See also, Hill v. Sacka*, 256 Mich. App. 443, 666 N.W.2d 282 (2003) (child who approached a tethered dog waving his arms and making noises held to have provoked the dog and, therefore, not entitled to recover under the statute).

Viewing the facts in a light most favorable to the Plaintiff in this case, all of the deposition testimony attached to the supporting briefs indicates that there is no question that the actions of the Plaintiff provoked the dog.  The deposition testimony of Plaintiff himself and the corroborative testimony of James Brao, Patricia Carpenter, John Evans and Christine Panyard all establish that Plaintiff Wiitanen provoked the dog when he grabbed it by the fur on the back of its neck, causing the dog to turn and bite Plaintiff.

Plaintiff argues however -- without any citation of authority -- that an issue of fact remains as to "whether Plaintiff could provoke an already provoked and enraged dog." Plaintiff, thus, would like the Court to ignore that the statute makes no exceptions based on the aroused and aggressive condition of the dog at the particular time of the

9

2:05-cv-71684-GER-PJK   Doc # 20   Filed 10/04/05   Pg 10 of 11   Pg ID 411

provocation involved in the case. The statute says, "If a dog bites a person, without provocation." M.C.L. § 278.351(1). It does not say "if a sleeping dog. . . ," or "if an attentive dog. . . ," or "if an aroused dog. . . ," or any other particular status of the dog which in any way eliminates the requirement that there be no provocation in order to proceed under the statute. The Michigan Supreme Court made this point clear in *Nicholes, supra* when it held that the trial court erred in refusing to grant the Defendant's motion to exclude testimony regarding the dog's vicious behavior:

> The. . . question for the jury was whether stepping on the dog under the circumstances described by witnesses to the biting constituted provocation. Nothing else had to be proved and <u>nothing else was relevant -- not his prior gentleness or roughness nor the sensitivities of his breed.</u>

237 N.W.2d at 471.

Under Fed. R. Civ. P. 56 as interpreted in the Supreme Court's *Celotex* trilogy, summary judgment is appropriate if there is no genuine issue of material fact. In this case, Plaintiff's own admissions and the testimony of the witnesses establish that Plaintiff was bitten as a result of his provocation of the dog. There is, therefore, no genuine issue of material fact and summary judgment in favor of Defendant on this issue is appropriate. Accordingly, Plaintiff's claim under the Michigan dog-bite statute will be dismissed.

10

CONCLUSION

For all the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's motion for partial summary

judgment is GRANTED.  Accordingly,

IT IS FURTHER ORDERED that Plaintiff's claim for relief under the Michigan

dog bite statute, M.C.L. § 287.351 is DISMISSED, WITH PREJUDICE.  This case will

proceed only with respect to Plaintiff's common law negligence claim.

_____

s/Gerald E. Rosen_____
Gerald E. Rosen
United States District Judge

Dated:  October 4, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record
on October 4, 2005, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry_____
Case Manager

11