UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN J. WIITANEN,

        Plaintiff,                  No. 05-CV-71684-DT

                                  Hon. Gerald E. Rosen

vs.

JOSEF DWORATSCHEK,

        Defendant.

_____/

OPINION AND ORDER REGARDING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on    August 30, 2006

PRESENT:  Honorable Gerald E. Rosen
                 United States District Judge

## I. INTRODUCTION

This diversity dog bite case is presently before the Court on Defendant Josef Dworatschek's Motion for Summary Judgment on Plaintiff's claims of strict liability in tort and negligence.[1]  Plaintiff has responded to Defendant's motion and Defendant has replied.  Having reviewed and considered the parties' briefs and supporting evidence, the Court has determined that oral argument is not necessary.  Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), this matter will be decided on the briefs.  This Opinion and Order sets forth the Court's ruling.

## II. PERTINENT FACTS

On September 27, 2003, Plaintiff John Wiitanen and Defendant Josef Dworatschek were in attendance at a session of the Wolverine Schutzhund Club, a club

---

[1] Plaintiff also alleged in his Complaint a claim of statutory liability under the Michigan dog bite statute, M.C.L. § 287.351.  The Court previously granted Defendant's motion for partial summary judgment on this statutory claim leaving only Plaintiff's common law strict liability and negligence claims for adjudication.

1

created for the purpose of training dogs in the sport of Schutzhund. (Plaintiff's Brief, p. 1). Schutzhund is a German word meaning "protection dog" and is a form of dog sport which was created in Germany in the early 1900's in order to test the purity of German Shepherd dogs. However, non-German Shepherds are now also trained in Schutzhund and may compete in Schutzhund events. Schutzhund tests, among other things, the work-ethic, courage, intelligence and "train-ability" of dogs. To be awarded with a Schutzhund title, a dog must pass three phases: tracking, obedience and protection. (*See* James E. Brao's Deposition, p. 26; Defendant's Brief, Exhibit C).

The Wolverine Schutzhund Club session on September 27, 2003 was held on the property of John Evans, in a large field used for Schutzhund training. (Defendant's Brief, p. 1). In addition to Plaintiff and Defendant, four other persons were present with their dogs on that date: Chris Paynard, Patricia Carpenter, James E. Brao and John Evans. (Defendant's Deposition, p. 25; Defendant's Brief, Exhibit B).

At approximately 11:00 a.m. on September 27th, Defendant Dworatschek began training his dog, Cole, while Plaintiff Wiitanen and Chris Paynard, both of whom had finished training their own dogs, stood watching approximately thirty feet away. (Plaintiff's Deposition, p. 42; Defendant's Brief, Exhibit A). At some point during the training of Cole, Defendant initiated a disciplinary move by pulling on Cole's collar. (Defendant's Deposition, p. 45; Defendant's Brief, Exhibit B). Cole, relatively new to Schutzhund training, reacted by turning to bite Defendant's arm. (Defendant's Deposition, p. 45; Defendant's Brief, Exhibit B). Although Cole was wearing an electric collar, (Patricia Carpenter's Deposition, p. 21; Plaintiff's Brief, Exhibit B), the Defendant testified that it was not used at this point in time. (Defendant's Deposition, p. 43; Defendant's Brief, Exhibit B).

Though Plaintiff Wiitanen did not see the dog begin to bite Defendant Dworatschek, he claims to have heard the Defendant begin to scream something that sounded to him like "ow, ow, ow". (Plaintiff's Deposition, p. 45; Defendant's Brief,

Exhibit A). Defendant Dworatschek is German and, as the Plaintiff admits, speaks broken English. (Plaintiff's Deposition, p. 45; Defendant's Brief, Exhibit A). Defendant insists that what Plaintiff heard was not "ow, ow, ow" but rather, "oust, oust, oust," -- German word for "off,"the traditional command to get a dog off of a person. (Defendant's Deposition, p. 43; Defendant's Brief, Exhibit B). Plaintiff admits that Defendant at no time called for aid or assistance from him or any of the other trainers (Plaintiff's Deposition, p. 47; Defendant's Brief, Exhibit A). Nonetheless, Plaintiff ran to the Defendant and grabbed Cole by the back of the neck in an attempt to get him to release his bite. (Plaintiff's Deposition, pp. 48-9; Defendant's Brief, Exhibit A). Surprised by this, Cole then released his bite grasp of his owner and turned to bite Plaintiff Wiitanen who was pulling on the dog's neck. (Plaintiff's Deposition, p. 57; Defendant's Deposition, Exhibit A).

Defendant immediately began to regain control of Cole by pulling on his leash. (James E Brao's Deposition, p. 48-9; Plaintiff's Brief, Exhibit C). Cole reacted to this by releasing his bite on the Plaintiff and once again bit his owner. (Plaintiff's Deposition, p. 59; Defendant's Brief, Exhibit A). Moments later, however, Defendant was able to gain complete control of Cole and the dog released his bite grasp. (Defendant's Deposition, p. 59; Defendant's Brief, Exhibit B). While the Defendant suffered little injury to his own hand and arm, Plaintiff Wiitanen suffered injuries which he claims has prevented him from working. (Defendant's Deposition, pp. 59-60; Defendant's Brief, Exhibit B).

### III. PROCEDURAL HISTORY

Plaintiff Wiitanen initiated this lawsuit in Genesee County Circuit Court. As originally filed, Plaintiff alleged claims under both the Michigan "Dog Bite Statute", MCLA § 287.351, and Michigan common law. The suit named as defendants Josef Dworatschek, the Wolverine Schutzhund Club, and John Evans, the owner of the property on which the Club was conducting training on September 27, 2003. On March 8, 2005, the Wolverine Schutzhund Club was dismissed as a defendant. Then on April 4,

2005, John Evans was dismissed. On April 28, 2005, Defendant Dworatschek removed this case to this court based on diversity of citizenship. (Plaintiff is a citizen of the State of Michigan and Defendant Dworatschek is a citizen of Canada.)

On October 4, 2005, Defendant moved for partial summary judgment on the Plaintiff's statutory claim. This court granted the motion holding that "provocation," which invalidates a claim under the Michigan Dog Bite Statute, does not require intent to provoke. Defendant now moves for summary judgment on Plaintiff's remaining common law strict liability and negligence claims.

## IV. DISCUSSION

### A. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate absent any genuine issue of material fact that demands a trial. The applicable Federal Rule of Civil Procedure holds that summary judgment is proper "if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

As the Sixth Circuit held in *Betkerur v. Aultman Hosp. Ass'n*, "three 1986 Supreme Court cases- *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct.1348, 89 L. Ed. 2d 538 (1986), *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986), and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)- ushered in a 'new era' in the standards of review for a summary judgment motion." *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087. Accumulated, these cases lowered the movant's burden in such a motion. *Id.* As the court in *Celotex* stated, "In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of

4

proof." *Celotex*, 106 S. Ct., at 2552.

Under the guidance of these Supreme Court decisions, the Sixth Circuit established a number of principles to be applied in deciding summary judgment motions. Initially, the moving party may meet his or her burden by demonstrating that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case. *Betkerur*, 1087. If this is done, the non-moving party must present admissible evidence which demonstrates the existence of a genuine material issue of fact. *Id.* In doing so the non-moving party cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Id.*.

The party with whom the burden lies must present evidence establishing a jury question as to each element of his or her claim. *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000). The plaintiff's failure to present sufficient evidence on an essential of his claim renders all other facts immaterial for purposes of summary judgment. *Elvis Presley Enterprises, Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991). Although evidence is reviewed in a light most favorable to the non-moving party and the non-moving party must "do more than simply show that there is 'some metaphysical doubt' as to the material facts," trial courts are now given more discretion than they had in the "old era". *Betkerur*, 1087-88 (quoting *Matsushita*, 475 US 574, 586).

The Court will apply the foregoing standards in deciding Defendant's Motion for Summary Judgment in this case.

**B. PLAINTIFF'S STRICT LIABILITY CLAIM**

In his response to Defendant's motion for summary judgment, Plaintiff appears to indirectly concede that he has no strict liability claim as he failed to respond to the Defendant's arguments on this issue. However, even if Plaintiff's response is not read as a concession, summary judgment is nonetheless appropriate on this claim as Plaintiff has

failed to establish that Defendant had knowledge that his dog had any dangerous propensities. In *Trager v. Thor*, 445 Mich. 95, 516 N.W.2d 69 (1994), the Michigan Supreme Court set forth the requisite elements of a common law dog-bite strict liability claim and stated as follows:

> There has long existed at common law a cause of action against possessors of certain domestic animals for harm caused by those animals, regardless of fault. This common-law theory of strict liability is accurately stated in 3 Restatement Torts, 2d, § 509, p. 15, as follows:
>
>> (1) A possessor of a domestic animal that he knows or has reason to know has dangerous propensities abnormal to its class, is subject to liability for harm done by the animal to another, although he has exercised the utmost care to prevent it from doing the harm.
>>
>> (2) This liability is limited to harm that results from the abnormally dangerous propensity of which the possessor knows or has reason to know.
>
> Strict liability attaches for harm done by a domestic animal where three elements are present: (1) one is the possessor of the animal, (2) one has scienter of the animal's abnormal dangerous propensities, and (3) the harm results from the dangerous propensity that was known or should have been known.

445 Mich. at 99 (footnotes omitted).

A dog kept as a pet is a domestic animal. *Id.*, 445 Mich. at 99 n. 3.  Scienter, as the Michigan Supreme Court has stated, "is a term used in pleading to signify an allegation setting out the defendant's previous knowledge of a state of facts which it was his duty to guard against, and his omission to do which had lead to the injury complained of." *Grummel v. Decker*, 294 Mich. 71, 76-77 (1940).  With regard to dog bites, scienter exists when "the dog owned by the defendant[] was of a dangerous character and that the defendant[] knew it." *Id.* at 76.

Obviously, the mere fact that Cole bit Plaintiff Wiitanen on the one occasion is not proof that the Defendant knew, or should have known, that the dog had dangerous propensities and would in fact act in accordance with such dangerous propensities. Plaintiff has offered no evidence to establish scienter.  Plaintiff admitted in his own deposition that he had never heard of Cole acting up or biting anyone in the past.

6

(Plaintiff's Deposition, p. 45, Exhibit A, Defendant's Brief). Jim Brao, one of the other Schutzhund trainers present at the September 27, 2003 training session admitted that when he had seen him in the past, Cole had been a "very good dog". (Brao Deposition, p. 62, Exhibit C, Defendant's Brief). Additionally, Defendant testified in his deposition that, to his knowledge, Cole had never bit anyone nor even shown any signs of aggression (Defendant's Deposition, p. 23, Exhibit B, Defendant's Brief), and that he had never heard of Cole doing so before he became Cole's owner. *Id.* at 15-16. Therefore, because the Plaintiff cannot prove scienter, i.e., that Defendant knew or should have known of the dog's dangerous propensities, summary judgment is warranted on Plaintiff's strict liability claim.

## C.  PLAINTIFF'S NEGLIGENCE CLAIM

In support of his negligence claim, Plaintiff asserts "based upon the total situation at the time, that the Defendant had a duty, as defined under the common law of Michigan, to better control his dog." (Plaintiff's Response, p. 4). Yet because the Plaintiff is unable to demonstrate the existence of such a duty, and because the Plaintiff cannot demonstrate that Defendant Dworatschek had inadequate control over Cole, Defendant is entitled to summary judgment on Plaintiff's negligence claim.

In *Trager, supra,* the Michigan Supreme Court adopted the following rule to be applied to negligence cases involving dog bites:

> A negligence cause of action arises when there is ineffective control of an animal in a situation where it would reasonably be expected that injury could occur, and the injury does proximately result from the negligence. The amount of control required is that which would be exercised by a reasonable person based upon the total situation at the time, including the past behavior of the animal and the injuries that could have been reasonable foreseen.

*Trager* at 106.

It is the role of the court to determine if duty exists in this type of case. *Id.* at 105. In doing so, the court must keep in mind the normal characteristics of the animal involved, as well as any "abnormally dangerous characteristics" of the dog, of which the defendant is aware. *Id.*

7

Plaintiff here is unable to demonstrate that Defendant breached the ordinary duty of care required of dog owners. According to the Michigan Supreme Court

> Dogs. . . are generally regarded as so unlikely to do substantial harm that their possessors have no duty to keep them under constant control. Consequently, a mere failure to do so would not constitute breach of any duty of care.

*Trager* at 105-6 (citing 3 Restatement Torts, 2d, § 518, comments g & j, pp 31-32).

According to this standard of care, dog owners are thus given some leeway in the degree of control required from them, and *Trager* makes clear that there is no duty to constantly regulate or restrict one's dog. In the present case, Defendant had control over Cole until the moment that Plaintiff interfered and was bit. Even when Defendant did lose control over Cole due to Plaintiff's intervention, Defendant regained his control only moments later. Thus, Defendant not only met the duty of care ordinarily required by dog owners, but in fact went beyond what was required of him by law.

Plaintiff is also unable to demonstrate that the Defendant breached any heightened duty of care. As the Court also stated in *Trager,*

> If the possessor of such an animal, including one in temporary possession, has knowledge of some dangerous propensity unique to the particular animal, or is aware that the animal is in such a situation that a danger of foreseeable harm might arise, the possessor has a legally recognized duty to control the animal to an extent reasonable to guard against that foreseeable danger.

*Id.* at 106.

However, as indicated above, Plaintiff has failed to demonstrate that the Defendant was aware, or should have been aware, of some dangerous propensity that Cole possessed. If this could be demonstrated, Defendant would be held to a higher standard of care than that normally required of dog owners. *Id.* However, in the present case, Defendant has testified that he was not aware of any dangerous propensities of his dog, (Defendant's Deposition, pp. 27-28; Exhibit B, Defendant's Brief), and Plaintiff offers no record evidence to the contrary. Indeed, Plaintiff admits that he had never heard of Cole biting or hurting anyone in any other way prior to Mr. Dworatschek's ownership of the dog, (Defendant's Brief, Exhibit A, p. 45), and since Dworatschek had

become the dog's owner, Cole had done nothing to make Defendant think that he might in fact hurt someone. (Defendant' Deposition, pp. 27-28; Exhibit B, Defendant's Brief). In short, the Plaintiff has demonstrated no dangerous propensity of which anyone, including the Defendant, should have been aware.

Plaintiff has also failed to demonstrate that, by training Cole in the field in the manner he did on September 27, 2003, Defendant exposed Cole to a situation in which a danger of foreseeable harm to another might arise. If Plaintiff were able to demonstrate this, Defendant would also be held to a higher standard of care than that to which he would normally be held regarding his control of Cole. *Trager*, 106.

However, Plaintiff has failed to demonstrate that, because Cole had only been in the Defendant's ownership for approximately three months, Defendant was required to exercise special treatment while training the dog. Plaintiff has introduced no evidence to support such a claim, let alone to support any argument that Cole was insufficiently prepared to participate in a Schutzhund training session. And given that, according to the best of Defendant Dworatschek's knowledge, Cole had always been a well-behaved and obedient dog, Defendant would have had no good reason to suspect that training Cole in Schutzhund would result in the dog losing control. As the Defendant points out in his Reply Brief, "such a conclusion can only be reached by inference" and such a conclusion is not inferable without facts or evidence to support such. (*See* Defendant's Reply Brief, p. 1).

Additionally, Plaintiff has failed to demonstrate that, because Cole was in a relatively new surrounding, Defendant was required to exercise special care in his control over the dog. Plaintiff offers no evidence to support this argument except a cite to the deposition of Jim Brao:

> Well, first of all it's a new dog, it hardly knows its owner, and there are five people there that the dog has never saw before. Plus he's on a strange field. And the dog does not-- probably at that point in time the dog is unsure of what is actually happening to him.

(Plaintiff's Response, p. 5, citing Brao Deposition, pp. 14-15).

9

However, Plaintiff has taken Brao's statement out of context. Brao's full testimony reveals that he was discussing whether it would have been appropriate to direct someone to intervene if he observed a Schutzhund trainer being bit by his dog as was the case with Mr. Dworatschek and Cole. Brao testified as follows:

> Q. Did you ever direct John Wiitanen to grab the dog or grab the leash of the dog during the attack involving Joe -- let me rephrase that. During the incident involving Joe, did you ever direct Mr. Wiitanen to intervene?
>
> A.   No.
>
> Q. Would you have directed him to intervene?
>
> A. Never.
>
> Q. Why not?
>
> A. Well, first of all it's a new dog. . . .

(Brao Deposition, pp. 14-15; Exhibit C, Defendant's Brief).

Thus, the only evidence that Plaintiff has offered to support this argument is an out-of-context representation of Jim Brao's testimony; viewed in context, it is testimony that hurts, rather than supports, Plaintiff's case. Because he offers no other evidence, Plaintiff is once again asking the court to draw an inference without facts or evidence to support such.

Plaintiff also fails to sufficiently establish that Defendant's use of both a fur saver collar and an electric collar on Cole supports his argument that Defendant was negligent in his control of the dog. Plaintiff has offered no evidence to establish that the use of a fur saver collar demonstrates that Defendant could reasonably foresee Cole biting someone, and he offers no argument in support of this idea. Additionally, as Defendant points out in his Reply Brief, the other trainers present during the events agree that an electric collar is common in Schutzhund training. Christine Panyard and Patricia Carpenter testified that electric collars are used regularly in Schutzhund training. (Panyard Deposition, p. 11; Exhibit D, Defendant's Reply; Carpenter Deposition, p. 79; Exhibit F, Defendant's Reply). Both James Brao and John Evans admitted to using them

in Schutzhund training.  (Brao Deposition, pp. 36-37; Exhibit C, Defendant's Reply; Evans Deposition, p. 11; Exhibit E, Defendant's Reply).  Thus, even if Plaintiff is able to demonstrate that the Defendant was using an electric collar (which Defendant testified he was not), the testimony of the other trainers demonstrates that doing so is normal in Schutzhund training and further weighs against the Plaintiff's claim that Defendant was acting negligently.

Plaintiff similarly fails in his attempt to establish that, because Cole was not sufficiently used to responding to "oust" commands, the dog was put in a situation in which a foreseeable danger to another individual might arise.  In the present case, while Plaintiff does provide evidence to indicate that Cole was not completely trained in "oust" commands, he has failed to establish that Cole's "oust" command training was inadequate. In his Response to Defendant's motion for summary judgment Plaintiff quotes the following from the Defendant's Deposition:

> Q: You trained him at least twice a week since you've owned him, right?
>
> A: Yeah, but I concentrated more on obedience and tracking with him than doing oust commands like in protection.
>
> ---
>
> Q: Based on that, how much oust training did he need in order to get him to respond to it additionally to what you had already given him?
>
> A: Maybe another month or two of training.
>
> Q: What other areas of training did he need work in as of the time that this bite occurred?
>
> A: Well, in every phase, he needed work. It doesn't go overnight.

(Defendant's Deposition, pp. 47-48; Exhibit A, Plaintiff's Response).

The Defendant attempts to use this quote to state that Cole "did not understand oust commands." (Plaintiff's Answer, p. 6).  Yet the testimony immediately following demonstrates that the Defendant was not referring to Cole's failure to understand his commands but rather was referring to Cole's preparation for competition:

> A: Well, in every phase, he needed work. It doesn't go overnight.

11

  Q: Even though you had him for three months, he still needed to do it more?

  A: Oh, yeah, it takes a year 'til a dog is ready for a title, if not longer, some of them take two years.

(Defendant's Deposition, p. 48; Exhibit A, Plaintiff's Answer).

Additionally, Defendant testified earlier in the deposition that Cole did in fact understand oust commands:

  Q: Did you teach him enough so that he knew that, that that was part of his training at that point in time?

  A: He had partial training already too, so he knew it what oust means.

(Defendant's Deposition, pp. 45-46; Exhibit A, Plaintiff's Answer).

The foregoing demonstrates that the only evidence that the Plaintiff offers to support this argument is again testimony taken out of context. The evidence does not raise an issue of material fact as to whether or not Cole actually understood oust commands, and therefore cannot possibly establish that the Defendant was negligent in his control of the dog.

In sum, Plaintiff's various bits of "evidence" do not individually nor cumulatively establish the existence of a foreseeable danger.  As the Defendant points out in his Reply Brief, the "piling up" of inferences in order to cover a lack of evidence is not an acceptable legal tactic. *The Daily Press, Inc. v. United Press International*, 412 F2d 126, 133 (6th Cir. 1969). Inferences which by themselves are insufficient to establish negligence also do not, when added together, establish negligence, and numerous things which individually raise no issue of material fact do not, when combined, create an issue of material fact that warrants trial.

## CONCLUSION

Because Plaintiff has failed to demonstrate the requisite scienter, summary judgment will be granted in favor of Defendant Dworatschek on Plaintiff's strict liability claim. Additionally, because Plaintiff has failed to demonstrate that the Defendant owed him any duty above or beyond that required of ordinary dog owners, and because the

Plaintiff has failed to provide any evidence that creates an issue of material fact as to the breach of that duty, summary judgment will be granted to Defendant on Plaintiff's negligence claim.

For all of the reasons stated above,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment is GRANTED. Accordingly,

IT IS FURTHER ORDERED that this case be DISMISSED, with prejudice.


                    s/Gerald E. Rosen  
                    Gerald E. Rosen  
                    United States District Judge

Dated: August 30, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 30, 2006, by electronic and/or ordinary mail.

                    s/LaShawn R. Saulsberry  
                    Case Manager